IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 20, 2016

**DARIEN B. CLAY v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Hamilton County**
**No. 294910    Barry A. Steelman, Judge**

_____

**No. E2015-02107-CCA-R3-PC – Filed November 29, 2016**

_____

The Petitioner, Darien B. Clay, appeals from the Hamilton County Criminal Court's denial of his petition for post-conviction relief from his guilty plea convictions for aggravated robbery, attempted aggravated robbery, two counts of theft of property valued at $1,000 or more but less than $10,000, theft of property valued at $10,000 or more but less than $60,000, aggravated burglary, burglary of a business, and statutory rape, for which he received an effective thirteen-year sentence. On appeal, he contends that the post-conviction court erred in denying relief on his ineffective assistance of counsel claim and that the court erred in determining that the Petitioner's guilty plea was knowingly and voluntarily entered. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ALAN E. GLENN, J., joined.

Darien B. Clay, Clifton, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Neal Pinkston, District Attorney General; Lance Pope, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Petitioner's indictments and judgments are not in the appellate record. The guilty plea petition, which was received as an exhibit at the post-conviction hearing, reflects that he was charged in nine indictments with eighteen counts. It likewise reflects that the plea agreement disposed of all charges, with the Petitioner pleading guilty to eight counts and the State agreeing to the dismissal of ten. In the plea petition, the Petitioner agreed to an eight-year sentence for the aggravated robbery conviction, and the

transcript of the plea hearing, which was received as an exhibit at the post-conviction hearing, reflects that the sentence was to be served at 85% and that the remaining five years of the sentence were to be served at 30%.

At the post-conviction hearing, the Petitioner testified that he met with counsel "probably twice" in the three months the Petitioner was released on bond. He said that he wanted a trial and was not considering signing a plea agreement involving incarceration. The Petitioner said that shortly before he entered his pleas on June 23, 2014, he asked counsel what counsel thought would happen if the Petitioner went to trial and that counsel stated he thought the Petitioner would "lose." The Petitioner said that he asked counsel about the options and that counsel stated he could obtain a plea offer. The Petitioner said that he asked counsel how long he had to consider this alternative and that counsel said the Petitioner had "less than about 30 minutes" because the Petitioner was scheduled for trial the next day. The Petitioner said he still wanted to go to trial, but he said counsel's statement that the Petitioner would lose "kind of made me think otherwise." He said counsel told him the court's Tennessee Rule of Evidence 404(b) ruling combined the Petitioner's charges and "made it look even worse." The Petitioner did not think he and counsel had discussed a plea agreement before the day he pleaded guilty.

The Petitioner testified that counsel told him the plea offer specified an effective sentence of eight years, which consisted of eight years and five years to be served concurrently at 30%. The Petitioner said counsel estimated that the Petitioner would serve about two years in prison and that he might be released earlier if he participated in "programs." The Petitioner said he expressed concern to counsel about missing his son's childhood and not wanting to be in prison for five or six years. The Petitioner said that after counsel estimated the prison term around two years, he wanted to accept the plea offer because "two years really wasn't nothing [sic] at all."

The Petitioner acknowledged his signature on the plea petition and said he had signed it at counsel's office after being in court on the day he later entered the plea. The Petitioner said that counsel only provided him with the last page of the document and that he had not seen the portion of the plea petition containing the disposition of the charges and the respective sentences until his mother mailed it to him after he was in the Tennessee Department of Correction (TDOC). He said he did not go over this portion of the plea petition with counsel before he entered his pleas. He said they returned to court to enter the pleas. When asked why he did not tell the court at the plea hearing that Indictment 290005 was supposed to be dismissed pursuant to the plea agreement when the State announced that the Petitioner would plead guilty to Count 1 of that indictment, he said he had not been informed he could speak "out of turn." He said, "I just played

-2-

my part and did what I was told." The Petitioner recalled standing before the court and reviewing the terms of the plea agreement and the judge's asking him questions about the agreement. The Petitioner said, however, that he did not understand the terms of the agreement.

The Petitioner testified that counsel told him he was "pleading out to a universal plea." The Petitioner said that based upon the advice he received from counsel, he understood this to mean all of his sentences would be concurrent. He said, however, that after he reached the penitentiary, he learned that a "universal plea" was something recognized in federal courts but not in Tennessee courts and that his "out date" was in 2027. He said he did not understand when he entered his pleas that some of his sentences were to be served consecutively. He acknowledged that the transcript of the plea hearing reflected that some sentences were to be served consecutively but stated that he did not say anything during the hearing because he did not think he could "blurt out" that he had not agreed to consecutive sentences.

The Petitioner testified that after he learned about the length of his sentences, he called his mother, who contacted counsel. The Petitioner said his mother and counsel exchanged text messages, that counsel said he would "get it fixed," that counsel stopped communicating with the Petitioner's mother, and that his mother contacted the "board of professionals."

The Petitioner testified that he understood he would face a trial on all of the charges if he received post-conviction relief. He said this was his "plan." He said he had never pleaded guilty to another offense before the date on which he pleaded guilty in the present case.

The Petitioner testified that he had two codefendants in the March 2011 aggravated robbery to which he pleaded guilty. He agreed that he had been arrested on additional charges while the aggravated robbery charge was pending, that he failed to appear for court, and that his bond had been revoked. He said that he had an attorney before counsel and that the first attorney never told him that aggravated robbery required 85% service of the sentence. He said he decided against having the first attorney continue representation after the attorney told him he would rather have the State's case than the Petitioner's case. He thought he filed a bar complaint against this attorney and said he came before the trial court about retaining a different attorney. He agreed he had a pending trial date when counsel assumed representation, and he thought the judge said a new attorney would have to be prepared for the scheduled trial date.

The Petitioner testified that he met with counsel twice while he was incarcerated and twice while he was on bond. He said counsel never told him that he would have to serve 85% of an aggravated robbery sentence. When shown the plea agreement, he said that notwithstanding the language indicating that for aggravated robbery, he was to serve eight years with a minimum of 85%, he thought he would serve 30% because he was a Range I offender. He acknowledged that although he had not seen this portion of the document when he pleaded guilty, the trial judge had reviewed it line by line at the plea hearing. He acknowledged that the transcript of the plea hearing reflected that the assistant district attorney had stated that the effective sentence pursuant to the plea agreement was thirteen years, with the first eight years to be served at 85% and the remaining time as a Range I offender with 30% release eligibility. He also acknowledged that he stood at the podium when the trial judge advised him he would serve 85% for the aggravated robbery conviction and when counsel represented to the court that he had advised the Petitioner accordingly. The Petitioner said that he had responded, "Yes, sir," when asked by the judge if he understood the plea agreement and had answered, "No, sir," when asked if he had any questions. He acknowledged that he never asked the court what consecutive and concurrent meant. With regard to the aggravated robbery charge, the Petitioner said he thought his Range I classification meant he would serve 30% of the sentence, not 85%.

The Petitioner testified that when he asked counsel whether counsel was ready for trial on the aggravated robbery charge, counsel said, "Not really." The Petitioner said the only preparation counsel had made was to photograph the scene. The Petitioner said counsel never discussed the facts of the case with him. He said that on the day he entered his guilty pleas, counsel advised him that his codefendants were likely to testify against him, which the Petitioner said he had already known. He said he accepted the plea offer based upon counsel's prediction that the Petitioner would lose at trial, not upon the information that the codefendants were likely to testify against him.

At the post-conviction court's direction, the Petitioner read from the transcript of the plea hearing. The Petitioner read his prior testimony, which indicated that he had read the plea agreement and that counsel had reviewed it with the Petitioner. The Petitioner acknowledged that the trial court asked if he understood the agreement. When the post-conviction court asked the Petitioner why he had not indicated that he did not understand or did not agree, the Petitioner said he had agreed with everything because it was what his attorney told him to do. The Petitioner said, "And then I thought maybe, then, once this was over with, I can get him to come be with me and get this all resolved."

Breatha Marshall, the Petitioner's mother, testified that she retained counsel on the Petitioner's behalf. She said she met with counsel several times. She said counsel told

her and the Petitioner that the State did not want counsel to interview any of its witnesses. She said counsel promised to provide "CDs of the cases" but never did. She said she and the Petitioner never received copies of the charges.

Ms. Marshall testified that, on the day before the Petitioner pleaded guilty, she and the Petitioner met with counsel at counsel's office. She said that they reviewed the charges and that counsel said the Petitioner was going to enter a "universal" plea. She said she was unfamiliar with legal matters and that she asked many questions. She said that counsel was unable to answer many of the questions and that she did not "feel like we had enough to go on to go to trial." She said counsel told them that "it costs the State a lot of money" for the case to go to trial. She said counsel did not make a recommendation as to what the Petitioner should do. She said the Petitioner told counsel that the Petitioner did not have enough time to decide what to do because he had a court date the next day. She said the Petitioner said he would plead guilty because he thought he would receive an eight-year sentence with 30% service. She said counsel told them during the meeting on the day before the guilty plea hearing that the sentence would be eight years at 30%.

Ms. Marshall testified that on the day of the plea hearing, the trial judge stated he was going to give the Petitioner time to talk to counsel about the plea document. She said that at counsel's office, the Petitioner asked about taking the case to trial and that counsel said the Petitioner would lose at a trial. She said that the Petitioner stated he did not have enough time to make a decision and that the day was stressful. She said the Petitioner told counsel, "If they just going [sic] to let me do two years, I'll take two years." She said that counsel replied that the Petitioner would receive thirty-two years if the cases went to trial and that the Petitioner responded that he was not going to serve thirty-two years. She said counsel stated that with the time the Petitioner had served and if he participated in "a program," the Petitioner would "be home in two years" if he pleaded guilty. She said she only reviewed the last page of the plea document, which she saw the Petitioner sign. She said that counsel stated he had a rough draft of the plea agreement and that counsel retyped the document as he reviewed it with them.

Ms. Marshall testified that when they returned to court, the trial judge announced different terms of the plea agreement than those previously specified by counsel. She said she became emotional and "lost it" when the judge mentioned a thirteen-year sentence. She said that after the Petitioner was in the TDOC, she tried to contact counsel about the situation. She said they exchanged text messages. She said counsel stated he would contact the TDOC. She said that she knew there was a time limit "to enter a plea to have this brought back to court" and became concerned when counsel stopped responding. She said she called the prosecutor's supervisor and expressed her concerns.

-5-

She said that although the supervisor said he would have the prosecutor call her, she did not receive a call. She said that she called the supervisor a second time and that the prosecutor returned the call this time. She said that in the call, she explained that the Petitioner's sentence had not been what she and the Petitioner agreed to accept and that she and the Petitioner would have wanted to take the case to trial if they had known the sentence was thirteen years. She said the prosecutor told her the matter was none of her business. She said she told the prosecutor that counsel would not call her and that she was going to get another attorney. She said the prosecutor stated, "You can get whoever [sic] you want to," and "Nobody can step up to me."

Ms. Marshall testified that a motion to set aside the guilty pleas was not filed in a timely manner because she had been awaiting responses from counsel and the "board of professionals."

Counsel testified that he thought the term "universal settlement" was unique to him and that he used it to mean, "We're going to handle all of your stuff at one time." He said that to the extent he used this term with the Petitioner, it was always in the context of disposing of all of the Petitioner's pending cases with one plea agreement. Counsel said he explained the terms consecutive and concurrent to his clients. Counsel acknowledged that the term universal plea was formerly used in federal court.

Counsel testified that the Petitioner had a series of charges and that the Petitioner had been repeatedly placed on bond but had incurred additional charges. He said that if the Petitioner were convicted of many of the charges, the sentences would be imposed consecutively by operation of law due to their having been committed while the Petitioner was on bond for other charges. He estimated the Petitioner might receive an effective sentence of twenty-eight to thirty-two years if convicted.

Counsel testified that the Petitioner's mother came to see him about representing the Petitioner while the Petitioner had another attorney. He said that he typically did not take cases when another attorney was involved and that he told the Petitioner's mother that the attorney who was currently retained was a good attorney. He said that the Petitioner's mother returned a few days later and said the other attorney's employment had been terminated and that he took the case because he liked the Petitioner's mother and thought she "had a heart for her son."

Counsel testified that he obtained extensive discovery materials from the previous attorney. Counsel said that although he was retained only for the first two of the Petitioner's cases, he told the Petitioner's mother that he would review the Petitioner's other cases. Counsel said he met with the prosecutor two to four times to review the

evidence and to determine if any outstanding discovery existed. Counsel said he thought he received all the discovery to which the Petitioner was entitled.

Counsel testified that he thought a plea agreement disposing of all of the cases would be advantageous to the Petitioner, who was young and faced the possibility of a lengthy effective sentence. Counsel thought the Petitioner received a favorable settlement.

Counsel testified that in preparation for the aggravated robbery trial, he talked to the State's main two witnesses, who were police officers. He said that he tried unsuccessfully to meet with two eyewitnesses on his own. Counsel said, however, that the prosecutor had agreed that if the case went to trial, counsel would be able to speak with the witnesses. Counsel said he had gone to the scene and spoken with another individual who had not been present when the offense occurred but who told him about conversations with the eyewitnesses. He noted the evidence showed that the Petitioner and the codefendants committed an aggravated robbery one day and an attempted robbery the next, that evidence from the aggravated robbery was obtained as a result of the attempted robbery, and that the trial court had ruled that the evidence obtained from the second offense would be admissible at the trial of the first. Counsel said he was aware the codefendants were going to testify and acknowledge they and the Petitioner had committed the offenses. Counsel said the Petitioner had given a pretrial statement in which he acknowledged his involvement in the second offense but in which he claimed he had been forced at gunpoint to participate, and counsel said he had reviewed the statement with the Petitioner. Counsel thought the trial was going to be straightforward and said he had been prepared for trial.

Counsel testified that he met with the Petitioner at counsel's office six to eight times. He said he had numerous conversations with the Petitioner's mother. He said that over time, he had "a number of" conversations with the Petitioner and the Petitioner's mother about how entering a guilty plea to all of the cases had the potential for a shorter effective sentence than by disposing of the cases individually. He said that the Petitioner asked for counsel's assessment of the likelihood of prevailing at a trial for aggravated robbery and that counsel told the Petitioner he thought the Petitioner would be found guilty and faced a minimum sentence of eight years at 85%. Counsel said the Petitioner and the Petitioner's mother asked if the Petitioner might receive probation as a first-time offender and that he explained clearly the Petitioner could not. Counsel said they calculated the time the Petitioner would serve for an eight year sentence with 85% service. Counsel said that he explained the 85% service requirement repeatedly and that he provided the Petitioner and the Petitioner's mother with a copy of the law because he did not think they believed him. Counsel said that he gave them pads of paper when they

came to his office; that he wrote the charges, the minimum sentences, and the terms of the plea offer; and that he had them write it. He said that they had multiple conversations about the terms and that he sent the Petitioner's mother text messages.

Counsel testified that he had reviewed his text messages during the Petitioner's mother's post-conviction hearing testimony. He said that on June 18 or 19 of an unspecified year, the Petitioner's mother sent him a text message inquiring about the terms of the plea offer. He said he responded that the offer was for an effective thirteen-year sentence, eight years of which was to be served at 85%. He said that he did his best to calculate the amount of time the Petitioner would serve of the eight-year sentence.

Counsel testified that the main concern expressed by the Petitioner and the Petitioner's mother was the amount of time the Petitioner would have to serve. Counsel said that after taking into account the Petitioner's time served, counsel informed them that he estimated "5.5ish minimum of real new, new real time."

Counsel testified that he met with the Petitioner and the Petitioner's mother on June 19 of an unspecified year and that he explained the terms of the plea offer. He said that on June 20, the Petitioner's mother sent him a text message inquiring about the "breakdown" of the plea offer because she wanted to explain it to the Petitioner. He said he responded by stating that the plea offer called for a thirteen-year effective sentence, with the first eight years to be served at 85%, which he said would be about 75%, or six years, taking into account credit the Petitioner would receive for "good time." Counsel said he advised that the remaining five years would be served at 30%, which would amount to about one year and seven months, and that the result would be the Petitioner would serve a total of about seven and one-half years. Counsel denied that he ever told the Petitioner or the Petitioner's mother that the Petitioner would serve two years and said the day of the post-conviction hearing was the first time he had heard anything about the Petitioner serving two years.

Counsel testified that the Petitioner "kind of wanted a trial" for the aggravated robbery case and that counsel prepared for a trial. Counsel said that he thought the Petitioner did not have a good chance of acquittal and that he would have communicated his opinion in this regard.

Counsel testified that originally, the plea document was handwritten. He said that it was complicated and that he asked for time to go to his office to type it. He said that although some typographical errors existed, "[w]e caught most of them" and that none changed the structure of the effective sentence. Counsel said that he reviewed the plea document with the Petitioner before it was typed and that they reviewed it again at his

office after it was typed. Counsel thought he made the terms clear to the Petitioner and the Petitioner's mother. Counsel said that neither the Petitioner nor the Petitioner's mother expressed any misunderstanding of the terms. Counsel disagreed with the Petitioner's testimony that the Petitioner never saw the typed version of the plea agreement. Regarding a handwritten change on the document reflecting that the sentences for two counts were to be served consecutively to another count, counsel thought the prosecutor made the change and said the change did not affect the effective sentence length of thirteen years consisting of an eight-year sentence at 85% and the remaining five years at 30%. Counsel thought the Petitioner signed the typed plea document after the handwritten changes were made because counsel thought he would have had the prosecutor review the document first and because counsel's practice was to have a client sign a plea document after it was in its final form.

Counsel testified that a couple of days after the Petitioner's guilty pleas, the Petitioner's mother began calling him. He said she asked specific questions about the sentence. Counsel said that he thought something might have been wrong with the guilty plea document, that he called someone with the TDOC to review the matter, and that it appeared a misunderstanding occurred because the TDOC paperwork presented the sentence information to the Petitioner in a "new and different" format. Counsel said that he sent text messages to the Petitioner's mother and that she was supposed to meet with him but never made an appointment. Counsel said that he spoke with the prosecutor, reviewed the plea document, and concluded that the paperwork accurately reflected the agreement.

After receiving the proof, the post-conviction court found that the Petitioner failed to prove by clear and convincing evidence that he had received the ineffective assistance of counsel and that his guilty plea had not been knowingly and voluntarily entered. This appeal followed.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

# I

## Ineffective Assistance of Counsel

The Petitioner contends that counsel provided ineffective assistance by having the Petitioner enter a "universal guilty plea," which he argues does not exist "on a State trial level in Tennessee." The State contends that because the record supports the post-conviction court's findings crediting counsel's testimony over that of the Petitioner and the Petitioner's mother, the post-conviction court did not err in determining that the Petitioner failed to prove his claim by clear and convincing evidence. We agree with the State.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The Petitioner argues that due to counsel's ineffectiveness in explaining the terms of the plea agreement, the Petitioner was misled into believing all of his cases would be resolved with a single eight-year sentence. At the hearing, the Petitioner and his mother testified that he thought he was receiving an eight-year sentence and a five-year sentence to be served concurrently at 30% and that he would serve about two years in prison. Counsel testified that he repeatedly explained the sentence composition and alignment to the Petitioner and the Petitioner's mother and that it consisted of an effective thirteen-year sentence, with eight years to be served at 85% followed by five years at 30%. Counsel said he used the term "universal" in the context of disposition of all charges in one plea agreement. In its order denying relief, the post-conviction court made the following findings:

> The petitioner alleges that counsel did not give him accurate information about his sentence exposure and the plea offer, including consecutive sentences and the length of the effective sentence, thereby rendering the pleas unintelligent. The proof regarding counsel's advice about the plea offer is contradictory, the petitioner and his mother saying one thing and counsel another. The petitioner's and his mother's testimony, however, is inconsistent with the petitioner's acquiescence to the statements of the terms of the plea agreement at the plea hearing. It is also incredible in other respects, too, specifically, the petitioner's interpretation of "universal plea" to mean concurrent sentences, despite counsel's description of such a plea as comprehensive, resolving all charges, and the petitioner's attribution of his failure to question what, by his account, was an erroneous statement of the terms of the plea agreement at the plea hearing to lack of assertiveness, when he or his mother was assertive enough to replace his original counsel and file complaints about original and substitute counsel with the board.

> According to counsel, whose testimony the Court accredits, he did not misrepresent the terms of the plea offer to the petitioner or the petitioner's mother. Counsel gave the petitioner and his mother a copy of the law and tried to impress on them that the minimum sentence for any conviction for aggravated robbery, which necessarily means any conviction for aggravated robbery, whether as a result of trial or plea, is eight years, with a release eligibility of eighty-five percent.

> Nor, apparently, did counsel overstate the petitioner's sentence exposure as thirty-two years. The effective length of consecutive minimum sentences of eight years for aggravated robbery in cases 280559 and

-11-

283678 alone would be sixteen years, with a release eligibility of eighty-five percent on both, a less favorable outcome for the petitioner than the plea agreement. While there is no evidence that the other cases against the petitioner were strong, there is no evidence that they were weak or the petitioner had a defense. Furthermore, by accumulating convictions in successive trials, the petitioner's classification and release eligibility could worsen. Nor, under T.C.A. § 40-2-111(b), could the petitioner, by having successive trials, avoid a consecutive sentence for a felony that he committed while on bail for another offense of which he was also convicted. The Court therefore finds no deficiency in counsel's performance in these respects.

Upon review, we conclude that the evidence does not preponderate against the post-conviction court's factual findings crediting counsel's testimony over that of the Petitioner and the Petitioner's mother relative to the accuracy of counsel's advice about the terms of the plea offer. We note, as well, the Petitioner's acknowledgment at the post-conviction hearing that he had indicated his understanding of the plea agreement to the trial court at the guilty plea hearing. The evidence does not preponderate against the post-conviction court's finding that counsel's performance in this regard was not deficient.

We have not overlooked the Petitioner's argument that counsel was ineffective in using the term "universal" to describe the disposition of the charges pursuant to the State's plea offer. At the hearing, the Petitioner testified that counsel told him the plea offer was a "universal plea" and that the Petitioner learned after he was in the TDOC that a universal plea was a specific type of plea agreement recognized in federal but not Tennessee courts. The Petitioner said that he had understood from counsel that the sentences would be served concurrently and that the research he did after entering into the plea agreement showed that a universal plea provided for concurrent service of all sentences. Counsel acknowledged at the post-conviction hearing that the term universal plea was a term formerly used in federal court, although he said his use of the term with the Petitioner had been in the context of resolving all of the cases with one plea agreement. Without regard to whether the terminology used by counsel had the potential for confusion with a term formerly used in federal court, the Petitioner's testimony reflects that he did not become aware of the former federal terminology until after he entered the guilty plea and was in the TDOC. The post-conviction court credited counsel's testimony that he explained the terms of the offer to the Petitioner and the Petitioner's mother, and the Petitioner acknowledged his understanding of the agreement and his desire to plead guilty at the guilty plea hearing. The Petitioner is not entitled to relief on this basis.

# II

## Unknowing and Involuntary Plea

The Petitioner contends that his guilty plea was not knowingly and voluntarily entered because he did not understand the terms of the plea agreement. The State contends that the post-conviction court did not err in determining that the Petitioner failed to prove his claim by clear and convincing evidence. We agree with the State.

The Supreme Court has concluded that a guilty plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A trial court must examine in detail "the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969); *see Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Appellate courts examine the totality of circumstances when determining whether a guilty plea was voluntarily and knowingly entered. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A guilty plea is not voluntary if it is the result of "[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats." *Boykin*, 395 U.S. at 242-43; *see Blankenship*, 858 S.W.2d at 904. A petitioner's representations and statements under oath that his guilty plea is knowing and voluntary create "a formidable barrier in any subsequent collateral proceedings [because] [s]olemn declarations . . . carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

The post-conviction court made the following findings:

> Although, at the time of the pleas, the petitioner was young and apparently unfamiliar with criminal proceedings, he and his mother had numerous conferences with competent counsel, who gave them an accurate assessment of the charges, the sentence exposure, and the plea offer. In addition, the Court reviewed the charges, penalties, and terms of the plea agreement with the petitioner, who did not then indicate any surprise, misapprehension, or coercion. Furthermore, there is no evidence that the petitioner had a defense to any charge and, by going to trial, could have avoided one or more convictions or apparently mandatory consecutive sentences and secured a shorter effective sentence. The effective length of consecutive minimum sentences of eight years for aggravated robbery in cases 280559 and 283678 alone would be sixteen years, with a release eligibility of eighty-five percent on both, a less favorable outcome for the petitioner than the plea agreement. The Court finds that the guilty pleas

-13-

represent a voluntary and intelligent choice among the alternatives available to the petitioner.

The Petitioner's argument relies on his post-conviction hearing testimony that he did not understand the terms of the plea agreement and that he merely followed counsel's instructions when he verbalized to the trial court his understanding of and agreement to the terms of the plea offer. The post-conviction court found that counsel accurately explained the plea offer to the Petitioner, that the trial court reviewed the terms of the agreement with the Petitioner, and that the Petitioner did not indicate any lack of understanding or unwillingness to enter into the agreement at the guilty plea hearing. The transcript of the guilty plea hearing reflects that the Petitioner acknowledged that he understood the plea offer, the effective thirteen-year sentence, and the 85% service requirement for the first eight years. The Petitioner stated that he waived his right to a trial, that he made the decision to do so voluntarily, and that he wanted to plead guilty. The post-conviction court rejected the Petitioner's subsequent testimony to the contrary, and the record does not preponderate against the court's determination in this regard. The post-conviction court did not err in concluding that the Petitioner failed to prove his claim by clear and convincing evidence.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE